IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYELLEN MURPHY MCCANN and<br>JAMES MCCANN, h/w<br>21 Hickory Lane<br>Chalfont, PA 18914<br>    Plaintiffs<br><br>vs.<br><br>SANDALS RESORTS INTERNATIONAL, Ltd.<br>5 Kent Ave.<br>Montego Bay, Jamaica<br><br>and<br><br>SANDALS GRANDE ST. LUCIAN<br>P.O. Box G.I. 2247, Gross-Islet<br>St. Lucia, West Indies<br>    Defendants | CIVIL ACTION No.<br><br><br><br><br><br><br><br>IN ADMIRALTY |

## COMPLAINT

Plaintiffs, Maryellen Murphy McCann and James McCann, by and through their attorneys, Rubin, Glickman, Steinberg, and Gifford P.C., state by way of complaint against Defendants, Sandals Resorts International Ltd. and Sandals Grande St. Lucian, as follows:

### PARTIES

1. Plaintiffs, Maryellen Murphy McCann and James McCann, husband and wife, are adult citizens of the Commonwealth of Pennsylvania, residing at 21 Hickory Lane, Chalfont, Pennsylvania 18914.

2. Defendant, Sandals Resorts International Ltd. (hereinafter "Sandals International"), is a foreign limited liability company organized and existing under the laws of Jamaica, with its principal place of business located in the City of Montego Bay, Jamaica, West Indies.

3. Defendant, Sandals Grande St. Lucian (hereinafter "Sandals St. Lucian"), is a wholly-owned subsidiary of Sandals International.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states. Maritime Jurisdiction of this claim is founded upon 28 U.S.C. § 1331(a).

5. Venue is proper in this federal district under 28 U.S.C. § 1391(d).

6. At all times herein mentioned, each of the Defendants, jointly, and/or separately acted in concert, one with the other, all as hereinafter set forth below.

7. At all times herein mentioned, the Defendants conducted continuous and substantial business or business activities directly or indirectly within the Eastern District of the Commonwealth of Pennsylvania.

8. At all times herein mentioned, the Defendants derived substantial revenue from goods or services sold, provided or originating within the Eastern District of the Commonwealth of Pennsylvania.

9. At all times herein mentioned, the Defendants acted through agents located within the Eastern District of the Commonwealth of Pennsylvania.

10. At all times herein mentioned, the Defendants derived substantial revenue from their agents and customers located within the Eastern District of the Commonwealth of Pennsylvania.

11. At all times herein mentioned, the Defendants solicited business directly within the Eastern District of the Commonwealth of Pennsylvania.

12. At all times herein mentioned, the Defendants advertised within the Eastern District of the Commonwealth of Pennsylvania.

13. At all times herein mentioned, the Defendants maintained a website for use by residents of the Eastern District of the Commonwealth of Pennsylvania.

14. At all times herein mentioned, the Defendants had offices in and/or conducted business within the Eastern District of the Commonwealth of Pennsylvania.

15. At all times herein mentioned, the Defendants derived substantial revenue from business solicited directly within the Eastern District of the Commonwealth of Pennsylvania.

16. At all times herein mentioned, the Defendants directly targeted business from Pennsylvania residents in the Eastern District of the Commonwealth of Pennsylvania.

17. At all times herein mentioned, the Defendants directly targeted business to Pennsylvania markets in the Eastern District of the Commonwealth of Pennsylvania.

18. At all times herein mentioned, the Defendants purposely availed themselves of the protections of the laws of the Commonwealth of Pennsylvania.

19. At all times herein mentioned, the Defendants knowingly interacted for business purposes with Pennsylvania residents.

## FACTUAL ALLEGATIONS

20. Sandals St. Lucian is a resort hotel providing accommodations, meals, and other services for travelers and tourists.

21. Simon Says Boat Tours (hereinafter "Simon Says"), provides speed boat tours based out of Sandals St. Lucian.

22. Sandals International and Sandals St. Lucian own and/or operate and/or control and/or act as alter ego for Simon Says.

23. Sandals St. Lucian provides reservations and marketing services for Simon Says.

24. Sandals St. Lucian is the financial controller for Simon Says.

25. Sandals St. Lucian holds Simon Says out as being part of Sandals St. Lucian.

26. Sandals St. Lucian has invested Simon Says with tokens of authority that Simon Says uses in its marketing services and for demonstration to the public of its authority as the representative of Sandals St. Lucian.

27. Sandals St. Lucian is in whole or in part, an alter ego or responsible agent of Simon Says.

28. Simon Says is in whole or in part, an alter ego or responsible agent of Sandals St. Lucian.

29. Agency relationship exists among each of the Defendants and Simon Says in that each acts as agent for each of the others.

30. In July of 2012, Plaintiffs traveled to Sandals St. Lucian for their honeymoon.

31. Plaintiffs paid Sandals St. Lucian for an all-inclusive vacation.

32. While staying at Sandals St. Lucian, Plaintiffs made arrangements through Sandals St. Lucian to participate in a Simon Says speed boat tour.

33. The Simon Says speed boat tour was not included in Wife-Plaintiff's all-inclusive package with Sandals St. Lucian, but Plaintiffs paid Sandals St. Lucian for the Simon Says speed boat tour.

34. At all times relevant hereto, Sandals St. Lucian controlled and maintained the navigable waters which Plaintiffs and Simon Says traveled on July 3, 2012.

35. The weather conditions were unsafe for a Simon Says speed boat tour on July 3, 2012.

36. On July 3, 2012, Plaintiffs left Sandals St. Lucian on a Simon Says speed boat tour.

37. While on a Simon Says speed boat tour, the speed boat carrying Plaintiffs became nonoperational due to mechanical difficulty.

38. A replacement Simon Says speed boat traveled to where the disabled speed boat containing Plaintiffs and others were located.

39. All passengers and the tour guide were transferred from the nonoperational speed boat to the replacement speed boat.

40. Unlike the original Simon Says speed boat, the replacement boat was not equipped with seat cushions.

41. As the replacement boat made its return to Sandals St. Lucian, it began to travel at full speed.

42. Unbeknownst to Plaintiffs, safety personnel at Sandals St. Lucian monitor the waters around the resort to ensure the safety of their guests.

43. Also unbeknownst to Plaintiffs, but known by Defendants, a weather advisory warned of unsafe waters.

44. Nevertheless, Sandals St. Lucian permitted Simon Says to conduct normal operations despite the ocean's dangerous conditions.

45. While the replacement boat was traveling at full speed, it encountered rough waters reflected in the weather advisory.

46. When the boat encountered one of the many large waves, Wife-Plaintiff was thrown into the air and her buttocks came crashing down onto the non-cushioned boat seat.

47. Five minutes prior to Wife-Plaintiff being thrown into the air, as the boat encountered one of the many large waves, another passenger on Wife-Plaintiff's boat was thrown into the air and came crashing down onto the non-cushioned boat seat.

48. Wife-Plaintiff felt immediate pain as a result of her crash.

49. Upon returning to Sandals St. Lucian, Wife-Plaintiff filled out an incident report.

50. After filling out the incident report, Wife-Plaintiff was seen by a Sandals St. Lucian nurse as well as a doctor at Rodney Bay Medical Center.

51. Safety Manager, Richard Mathias, reviewed the sea conditions with Wife-Plaintiff and said that her boat should not have been speeding on those seas.

52. Wife-Plaintiff endured 3 days with substantial pain and suffering that prevented her from participating in any of the activities on her honeymoon.

53. Wife-Plaintiff subsequently cancelled all of her Sandals St. Lucian activities and returned to the United States after three days of severe pain.

54. When Wife-Plaintiff returned home, she complained of lower back pain with spasms and was seen by various doctors.

55. As a result of the crash, Wife-Plaintiff suffered severe and disabling injuries including, without limitation, an acute compression fracture of the superior endplate of L2 and left paramedian subligamentous protrusion of L5-S1, limited motion of the lumbar spine with tenderness and spasms.

56. As a result of the misconduct of the Defendants and negligent disregard for safety manifested by these Defendants, as set forth below, Wife-Plaintiff has been required, and she may in the future continue to require, surgical intervention, medical care, and other treatment, and she has incurred, and may in the future incur expenses for medicines and medical care to attend to, treat, alleviate, minimize and/or attempt to cure her conditions, and she may in the future sustain a loss of earnings and/or earning capacity because of the nature of her injuries.

57. As a result of the misconduct of the Defendants and negligent disregard for safety manifested by these Defendants, Wife-Plaintiff has been prevented and in the future she may be prevented and precluded from attending to her normal duties and advocacies; in addition, she has suffered and in the future she may continue to suffer pain, mental anguish, humiliation, disfigurement, scarring, a loss of "well being," restrictions in her ability to engage in her normal activities, and inability to pursue the normal and ordinary pleasures of life.

58. At all times relevant hereto, Wife-Plaintiff was traveling on navigable waters and was injured as a result of Defendants' negligent disregard for safety on said navigable waters.

59. At all times relevant hereto, Wife-Plaintiff's and Defendants' conduct had a substantial relationship to maritime activity.

### COUNT I - Negligence
### MARYELLEN MURPHY MCCANN V. DEFENDANTS

60. Paragraphs "1" through "59" are incorporated by reference as if set forth *in extenso*.

61. Defendants had a duty to ensure Plaintiff's safety while she was traveling on a Simon Says speed boat tour.

62. Defendants knew or should have known that on July 3, 2012, it was unsafe for a Simon Says speed boat tour to travel at full speed on extremely rough waters with Plaintiff and others as passengers.

63. Defendants knew or should have known that on July 3, 2012, it was unsafe to operate a Simon Says speed boat tour without seat cushions while transporting passengers.

64. Defendants knew or should have known that on July 3, 2012, it was unsafe for a Simon Says speed boat tour to travel at full speed without seat cushions while carrying passengers.

65. Defendants knew or should have known it was foreseeable that operating a Simon Says speed boat tour in the above manner and conditions would lead to Wife-Plaintiff's injuries.

66. Defendants breached their duty to Wife-Plaintiff by failing to exercise reasonable care with respect to the design, development, operation, production, testing, inspection, and marketing of the Simon Says speed boat tour, by, among other things: failing to warn customers of dangerous sea conditions on July 3, 2012; operating a Simon Says speed boat at full speed with Wife-Plaintiff as passenger on July 3, 2012; failure to provide seat cushions on the replacement Simon Says speed boat; operating a Simon Says speed boat at full speed without seat cushions with Wife-Plaintiff as passenger on July 3, 2012; failure to ensure Wife-Plaintiff's safety as passenger on the Simon Says speed boat tour; failing to represent accurately to Simon Says speed boat tour customers the dangers and likelihood of injury on said tour.

67. As a direct and proximate result of the Defendants' negligence, Wife-Plaintiff suffered the serious and severe injuries outlined above.

68. Defendants' negligent conduct was a substantial factor in causing Wife-Plaintiff's serious and severe injuries outlined above.

## COUNT II - Loss of Consortium

### JAMES MCCANN V. DEFENDANTS

69. The allegations of the foregoing Paragraphs "1" through "68" are incorporated by reference as though more fully set herein *in extenso*.

70. By reason of the aforesaid, Husband-Plaintiff has been deprived of the assistance and society of his wife and, all of which has been to his financial damage and loss.

10

**WHEREFORE,** Plaintiffs, Maryellen Murphy McCann and James McCann, demand judgment against Defendants, Sandals Resorts International, Ltd. and Sandals Grande St. Lucian, for compensatory damages in an amount in excess of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS, which amount exceeds the jurisdictional amount for arbitration pursuant to Local Civil Rule 53.2, plus interest, costs, and such other relief as the Court shall deem appropriate.

Respectfully submitted,

By: _____

Matthew Taylor Wilkov, Esquire (# 74259)
**RUBIN, GLICKMAN, STEINBERG AND GIFFORD**
2605 North Broad Street
P.O. Box 1277
Lansdale, PA  19446-0726
(215) 822-7575

Attorney for Plaintiffs
Maryellen Murphy McCann and James McCann